## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHN DOE, a Minor, by and through his father and Next Best Friend, WILLIE WILLIAMS. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 18-cv-1057-JES-JEH |
| THE BOARD OF EDUCATION OF METAMORA TOWNSHIP HIGH SCHOOL DISTRICT NO. 122, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## <u>ORDER AND OPINION</u>

Now before the Court is Defendants' Motion to Dismiss (Doc. 20) Plaintiff's First

Amended Complaint. For the reasons set forth below, Defendants' Motion (Doc. 20) is DENIED.

### BACKGROUND[1]

Plaintiff Willie Williams brings this action on behalf of his minor child, John Doe. At the

time Plaintiff filed the Amended Complaint, Doe was a 14-year-old freshman student at

Metamora Township High School ("MTHS") and the only Black student on the MTHS freshman

football team. MTHS is owned and operated by the Board of Education of Metamora Township

High School District No. 122 (the "Board" or "District"), an Illinois public school district and

local government entity created under the laws of Illinois. The District also receives federal

funding, and is therefore subject to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et*

*seq*. Doc. 22, at 1–2.

---

[1] The following factual allegations are derived from Plaintiffs' Amended Complaint (Doc. 22) and taken as true for the purposes of this Order. *Albright v. Oliver*, 510 U.S. 266, 268 (1994).

In his Amended Complaint, Plaintiff names as Defendants the Board; Board President Amy Defreitas; Vice President and Secretary Melissa Heil; Board members Diane Grebner, Stefanie McAllister, Blake Mishler, Jay Springer, and Wendy Vogel; District Superintendent Sean O'Laughlin; MTHS Principal Edward List; Assistant Principal Terry Vaughn; and MTHS head coach Pat Ryan. The claims are brought against the individual Defendants in both their individual and official capacities. *Id*. at 3–4.

The events giving rise to this action first began on or around September 23, 2017, when four White students on the MTHS football team recorded a video at one of the student's residences. As alleged in the Amended Complaint, the students made several derogatory remarks and slurs on the video, including such statements as:

a) "I used to own you back in the day," then when questioned by another Student as to what he used to own, the Student then responded, "Black people," while pointing a toy gun and making shooting motions toward the camera;
b) "Go back where you came from" – apparently referencing Black people going to Africa;
c) Raising up a stuffed monkey, one Student stated, "This is a Black person, right here," then forcefully threw the stuffed monkey to the floor and forcefully threw/slammed several items on top of the stuffed monkey;
d) Referring to the stuffed monkey specifically by DOE's name;
e) Requesting one Student to sing the "Alabama Black person song";
f) Singing, "I'm an Alabama n***er and I'm born to be free", and "I'm a porch monkey and I'm born to be free";
g) Making numerous references to "porch monkey", "n***er", and "stupid n***er";
h) Stating that "Back in Nam, all our troops were White people. We didn't have no n***ers in the squad", apparently referencing troops who served during the Vietnam War; and
i) Referencing Doe specifically by name.

*Id*. at 5–6. After recording, one of the students sent the video to Doe via text message. Doe notified his father about the video two days later, on September 25, 2017. *Id*. at 6.

On September 25, 2017, Williams brought the video to Assistant Principal Vaughn's attention. The next day, Vaughn informed Williams that the students who made the video would

receive a one-game suspension for the incident. However, the students only missed one day of football practice and were not suspended for one game. On September 27, 2017, Williams told Vaughn that a one-game suspension was not strict enough, and that the students did not actually receive the purported suspension in the first place. Williams also spoke with MTHS Principal List about the video and the District's response, and requested a meeting with the students and their parents. List informed Williams that he had not had a chance to review the entire video yet and would set up a meeting after the MTHS homecoming activities. On September 28, 2017, Williams spoke with District Superintendent O'Laughlin about the video. O'Laughlin informed Williams that the discipline he proposed—banning the students from football for the remainder of the season and from all extracurricular activities for the remainder of the school year—was too harsh. However, O'Laughlin also told Williams that the students would receive further punishment and would not be playing in the September 29, 2017 football game. *Id*. at 6–7.

Three of the four students were not allowed to play at the September 28, 2017 football game. On September 30, 2017, Williams complained on Facebook about what he perceived to be the District's refusal to take adequate disciplinary action against the students. Williams alleges that the District only arranged for a meeting with the student and their parents after he made the Facebook post. On October, 1, 2017, the Board held a special meeting to discuss the video incident and the discipline imposed, and ultimately decided to suspend the students involved for two football games. Board Member Vogel indicated at the meeting that the Board declined to impose harsher discipline because MTHS Coach Ryan would not have wanted to do so, and Ryan wanted the students to feel like they were part of the team. *Id*. at 6–7.

On November 14, 2017, Doe witnessed two MTHS students repeatedly referring to each other as "n***er" while walking down the hallway. After Doe reported the incident to

O'Laughlin, one of the students posted on his Facebook profile that he was going to jump Doe for reporting him to O'Laughlin. Williams requested that the student be disciplined for threatening to retaliate against Doe, and that the student be removed from Doe's math class to minimize any future threat to Doe. However, O'Laughlin and the District refused to take any further action in response to the threat. *Id*. at 7.

Plaintiff alleges that the Defendants have a long-standing history of refusing to investigate and take appropriate action in response to bullying, especially with repespect to bullying based on race or other protected categories. In support, Plaintiff alleges the following conduct:

a) Repeated racism toward and mistreatment of Black freshman football players, going back several years;
b) Repeated racial slurs and taunting directed toward a student during the 2017-2018 school year (done by three of the four Students involved in the September 23, 2017 incident);
c) Incessant bullying of a female student based on her gender in 2011;
d) The rape of a former female MTHS student by former male members of the MTHS football team approximately four years ago (specifically, the District promised to institute annual District-wide training on the issue of sexual harassment and rape, but later declined to hold the training); and
e) The incessant bullying of an Asian-American student based on his race approximately three years ago.

*Id*. at 8. Plaintiff further alleges that the Defendants' repeated failures to investigate allegations of bullying encouraged a climate where students were frequently bullied, harassed, and victimized on the basis of their race or other protected category, and that the offending students were emboldened to retaliate against reporters of racism, bullying and harassment. *Id*.

According to Plaintiff, the students who made the September 23, 2017 video and the student who threatened to retaliate against Doe were emboldened to bully Doe because of the Defendants' lack of action with respect to prior incidents of bullying or harassment. Additionally, the discipline imposed on the students is insufficient to deter MTHS students from engaging in

similar conduct in the future. Plaintiff alleges that the Defendants' failure to take appropriate action in response to the above incidents constitutes an intentional failure to protect Doe and is indicative of a District policy or practice that is deliberately indifferent to Doe's constitutional rights. *Id*. at 9.

Plaintiff alleges that the Defendants' actions were motivated by Doe's race or the race of Doe's abusers, that Defendants had actual knowledge of and were deliberately indifferent to the bullying and harassment of Doe, and that the harassment was so severe and pervasive that it deprived Doe of access to educational benefits and opportunities at MTHS and caused him severe emotional distress. Plaintiff then alleges that each of the individual Defendants were personally involved in the deprivation of Doe's constitutional rights, including:

a) VAUGHN, LIST, and O'LAUGHLIN failed to take appropriate measures to address the race-based bullying against DOE (the September 23, 2018 video tape) when it was first reported by WILLIAMS and were unresponsive to WILLIAMS until WILLIAMS complained of the District's lack of responsiveness on social media;

b) RYAN advocated for minimal or no punishment to be given to the Students involved in the September 23, 2017 video, stating to VOGEL that he wanted the Students to feel like they were part of the team;

c) At RYAN's direction, DEFREITAS, HEIL, GREBNER, MCALLISTER, MISHLER, SPRINGER, and VOGEL:

    i. decided on October 1, 2017 to impose an insufficient punishment of a two football game suspension against the Students;

    ii. failed to ensure that the Students actually served the suspension that the Board imposed;

    iii. failed to adequately address threats directed to DOE for reporting the September 23, 2017 video;

    iv. failed to properly investigate incidents bullying based on race and other protected classes that occurred prior to the September 23, 2017 video; and/or

    v. failed to properly investigate incidents of bullying based on race and other protected classes that occurred after the September 23, 2017 video.

d) LIST, O'LAUGHLIN and VAUGHN:

    i. initially issued an inadequate one-game suspension against the Students;

    ii. failed to ensure that the Students actually served the two-game suspension that the Board ultimately imposed;

     iii.    failed to adequately address threats directed to DOE for reporting the September 23, 2017 video;

     iv.    failed to properly investigate incidents bullying based on race and other protected categories that occurred prior to the September 23, 2017 video; and/or

     v.    failed to properly investigate incidents bullying based on race and other protected categories that occurred after the September 23, 2017 video.

*Id*. at 10–11. Lastly, Plaintiff alleges that Defendants engaged in a discriminatory practice with malice or reckless indifference to Doe's federally protected rights.

Based on the conduct alleged above, Plaintiff asserts seven different theories of liability based on alleged violations of 42 U.S.C. §§ 1981, 1983, and § 2000d, and Illinois common law causes of action for conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress. *Id*. at 11–14. On May 17, 2018, Defendants filed a Motion to Dismiss and a supporting memorandum. Docs. 20, 21. Therein, Defendants argue that (1) Plaintiff's Amended Complaint fails to state causes of action against the individual Defendants in their individual capacities; and (2) Plaintiff's Amended Complaint warrants dismissal because of the "shotgun" pleading format. With respect to the latter, Defendants argue that, "since the allegations against all of the defendants are made collectively and all of the collective allegations are made for each separate cause of action, both federal law and state law causes of action, it is impossible for defendants to discern the issues with regards to the seven counts." Doc. 21, at 5–6. Plaintiff has filed a Response addressing the arguments raised in Defendants' motion. Doc. 23. This Order follows.

## LEGAL STANDARD

Courts have traditionally held that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief. See *Conley v. Gibson*, 355 U.S. 41 (1957); *Gould v. Artisoft, Inc.*, 1

F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in the Federal Rules of Civil Procedure 8(e). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to relief beyond a speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The claim for relief must be "plausible on its face." *Id.*; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009). For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and all well-pleaded factual allegations are taken as true. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997); *M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 969 (7th Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

### DISCUSSION

*(1) Plaintiff's Amended Complaint States a Cause of Action Against the Individual Defendants*

Defendants argue in their memorandum in support of their Motion to Dismiss that Plaintiff's Amended Complaint fails to state causes of action against the individual Defendants in their individual capacities under § 1983 because Plaintiff does not allege that any of the individuals had a personal involvement in depriving Doe of a constitutional right. Doc. 21, at 3. Similarly, Defendants argue that Plaintiff fails to state a § 1981 claim against the individual Defendants in their individual capacities because Plaintiff does not allege that any of the individual Defendants participated in any acts of discrimination in violation of civil rights laws. *Id*. at 3–4.

In his Response, Plaintiff argues that he sufficiently alleged causes of action against the

Defendants in their individual capacities, quoting the following portion of the Amended

Complaint in support:

42. All of the Defendants named in their individual capacities have been personally involved in and played a role in the deprivation of DOE's federally-protected rights, including without limitation, the following:

a) VAUGHN, LIST, and O'LAUGHLIN failed to take appropriate measures to address the race-based bullying against DOE (the September 23, 2018 video tape) when it was first reported by WILLIAMS and were unresponsive to WILLIAMS until WILLIAMS complained of the District's lack of responsiveness on social media;

b) RYAN advocated for minimal or no punishment to be given to the Students involved in the September 23, 2017 video, stating to VOGEL that he wanted the Students to feel like they were part of the team;

c) At RYAN's direction, DEFREITAS, HEIL, GREBNER, MCALLISTER, MISHLER, SPRINGER, and VOGEL:

   i. decided on October 1, 2017 to impose an insufficient punishment of a two football game suspension against the Students;

   ii. failed to ensure that the Students actually served the suspension that the Board imposed;

   iii. failed to adequately address threats directed to DOE for reporting the September 23, 2017 video;

   iv. failed to properly investigate incidents bullying based on race and other protected classes that occurred prior to the September 23, 2017 video; and/or

   v. failed to properly investigate incidents of bullying based on race and other protected classes that occurred after the September 23, 2017 video.

d) LIST, O'LAUGHLIN and VAUGHN:

   i. initially issued an inadequate one-game suspension against the Students;

   ii. failed to ensure that the Students actually served the two-game suspension that the Board ultimately imposed;

   iii. failed to adequately address threats directed to DOE for reporting the September 23, 2017 video;

   iv. failed to properly investigate incidents bullying based on race and other protected categories that occurred prior to the September 23, 2017 video; and/or

   v. failed to properly investigate incidents bullying based on race and other protected categories that occurred after the September 23, 2017 video.

Doc. 23, at 10–11.

"Because there is no theory of *respondeat superior* for constitutional torts, a plaintiff 'must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Thus, "[a]n *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (citing *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Here, Plaintiff alleges that each of the individual Defendants participated in depriving Doe of his constitutional rights by failing to protect him against racial discrimination and harassment by MTHS students. Vaughn, List, and O'Laughlin failed to take appropriate remedial measures to address the bullying of Doe, issued an inadequate punishment and failed to ensure that punishment was carried out, and failed to respond to threats to Doe. Ryan advocated for no punishment or minimal punishment for the students who made the video. Defreitas, Heil, Grebner, McAllister, Mishler, Springer, and Vogel followed Ryan's suggestion and imposed inadequate discipline on the students who made the video. *See* Doc. 23, at 10–11. Thus, Plaintiff has sufficiently pleaded a § 1983 claim against each of the individual Defendants.

*(2) Plaintiffs' Pleading Format Provides Sufficient Notice to Defendants*

The second argument advanced by Defendants in their Motion to Dismiss is that Plaintiff's Amended Complaint warrants dismissal because the "shotgun" pleading format. Specifically, Defendants argue that, "since the allegations against all of the defendants are made collectively and all of the collective allegations are made for each separate cause of action, both federal law and state law causes of action, it is impossible for defendants to discern the issues with regards to the seven counts." Doc. 21, at 5–6. In his Response, Plaintiff argues that his

Amended Complaint is sufficiently clear in light of the fact that all of Plaintiff's causes of action arise from the same or similar facts. Doc. 23, at 4.

The primary purpose of Rules 8 and 10(b) of the Federal Rules of Civil Procedure is "to give defendants fair notice of the claims against them and the grounds supporting the claims." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946–47 (7th Cir. 2013) (citing *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011)). As discussed above, Plaintiff sufficiently alleges that each of the individual Defendants participated in depriving Doe of his constitutional rights. The individual Defendants need not look further than paragraph 42 of Plaintiff's Amended Complaint for notice of their alleged involvement in the purported deprivation of Doe's civil rights. In sum, this is not the case where a complaint consists of a "vague, confusing, and conclusory articulation of the factual and legal basis for the claim and [takes] a general 'kitchen sink' approach to pleading the case." *Cincinnati Life Ins. Co.*, 722 F.3d at 946–47. If Defendants believe that Plaintiff has failed to properly plead the elements of a specific cause of action, the proper response would be to file a motion to dismiss under Rule 12(b)(6) that states the elements of the cause of action, cites to relevant authority, and explains why Plaintiff's Amended Complaint is deficient with respect to one or more of those elements.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (Doc. 20) is DENIED.


Signed on this 23rd day of July, 2018.

<div style="margin-left:40%">

s/ James E. Shadid
James E. Shadid
Chief United States District Judge

</div>